UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-22845

| | |
|---|---|
| JEFFREY EMIL GROOVER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Jeffrey Emil Groover (hereinafter sometimes "Plaintiff" or "Mr. Groover"), pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (hereinafter "FTCA"), seeks more than $10 million in compensatory damages arising from the gross negligence of Defendant The United States of America (hereinafter sometimes "Defendant" or "Government") in utilizing an egregious and longstanding course of malicious and negligent conduct toward Plaintiff, *inter alia,* in consistently failing to adhere to prevailing medical professional standards of care generally recognized as acceptable and appropriate by reasonably prudent similar health care providers.

### THE PARTIES

1.      Plaintiff Mr. Groover is an inmate in the custody of the Federal Bureau of Prisons (hereinafter "BOP"), an agency of the Defendant, and currently resides at a BOP facility Miami, Florida called FCI  Miami, a low and medium security correctional facility owned and operated by Defendant.

1

2. At all times material hereto, Mr. Groover was an inmate in the custody of the BOP, was assigned to numerous BOP facilities, and was transported throughout the federal prison system pursuant to the unlawful course of conduct set forth herein. Included among the federal prisons housing Mr. Groover were institutions in Palm Beach and Miami, Florida as well as other facilities across the Eastern United States including FCI Butner, a low and medium security institution in North Carolina.

3. Defendant The United States of America is subject to suit for personal injury caused by the grossly negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff, pursuant to the FTCA.

4. At all times material to this action, Defendant United States of America was responsible for the correct and prompt response to the health care needs of inmates in its custody, including Mr. Groover's.

5. At all times material to this action, Mr. Groover was an inmate subject to the custody and control of the United States of America and subject to the care and treatment of the United States of America for any and all medical evaluation and treatment.

6. At all times material to this action, if Mr. Groover required medical evaluation or treatment, his only avenue was to rely on the medical evaluation and treatment provided by Defendant the United States of America.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States of America and is premised on the acts and omissions of the Defendant acting under color of federal law. This Court further has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b) in that this is a claim against the Defendant United States of America, for money damages, accruing on or after January 1, 1945, for personal injury caused by the negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or

employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff.

8. Jurisdiction founded upon the federal law is proper in that this action is premised upon federal causes of action under the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 2671, et. seq.

9. Pursuant to the FTCA, 28 U.S.C. § 2671, et. seq., on or about March 17, 2021, Plaintiff Mr. Groover presented his claim to the appropriate federal agency for administrative settlement under the FTCA requesting $10,000,000.00 or more. By letter dated March 7, 2022, Plaintiff's claim was finally denied in writing by the Southeast Regional Office of the Federal Bureau of Prisons, U.S. Department of Justice, and such denial was sent by certified or registered mail to the Plaintiff's counsel and was assigned Administrative Tort Claim number TRT-SER-2022-00607. This lawsuit was then timely filed.

10. This action is timely pursuant to 28 U.S.C. § 2401(b) in that it was presented to the appropriate federal agency within two years of accrual and this action was filed within six months of receipt of the certified letter sent by the federal agency denying the claim.

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as Defendant does business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

**STATEMENT OF CLAIM**

12. Mr. Groover initially came into the custody of the United States of America on January 30, 2013 which began a course of misconduct in which the United States of America repeatedly interacted with Mr. Groover in at least a grossly negligent manner based upon a special and illegal agenda toward Mr. Groover that substantially impaired his health and reduced the kind and nature of the medical care he received while in BOP custody over his many years in custody, all as set forth below.

13. Through a series of machinations associated with the legal claims made by the United States of America in its criminal actions against him, Mr. Groover was released on bail following his January 2013 arrest, and then was rearrested on October 11. 2013, after which Mr. Groover has continuously been in BOP custody until the current date.

14.    By the end of October, 2013, Mr. Groover was moved to the Federal Detention Center in Miami, Florida. During the initial portion of his stay there, the United States of America continually harassed him and denied him access to certain basic necessities of life including proper nourishment and basic medical care. Notwithstanding his attempts to deal with being singled out and denied basic necessities, Mr. Groover had a heart attack on January 6, 2014 and was taken to the hospital and resuscitated.

15.    Upon his return to Miami FDC after his heart attack, the United States of America denied Mr. Groover's request for rest and recoupment, after which he had another heart attack in November 2013 and spent a week hospitalized in Larkin Community Hospital. Thereafter, despite his precarious physical condition, Mr. Groover was then immediately moved out of FDC Miami and transported in "boxed handcuffs" to the Broward County Jail, a maximum security jail institution run by the State of Florida, County of Broward, which is known to be extraordinarily stressful and hard on inmates.

16.    While in the Broward County Jail, the United States of America instituted various criminal proceedings which it claimed required Mr. Groover to be housed for lengthy spells in the Broward County Jail. Between January, 2014 and July, 2014, Mr. Groover continued to be housed at the Broward County Jail and repeatedly complained to the United States of America that he was feeling short of breath and otherwise infirm, partially as a result of the horrendous conditions and lack of appropriate medical care at that institution. The United States of America failed and refused to move Mr. Groover or otherwise provide him with adequate medical care for his obviously worsening heart condition.

17.    Although Mr. Groover was moved back to  FDC Miami in late July, 2014, the level of custodial and medical care he received continued to be grossly substandard to include failures to receive meals and failures to on the part of the Government's medical department to provide Mr. Groover with the sort of intensive evaluation necessary to maintain his basic health. As a result of these and other failures, Mr. Groover had another heart attack in September, 2014, and spent a week recovering in Jackson Memorial Hospital.

18.    Because of the presence of his obviously worsening heart condition, the Government transported Mr. Groover in November, 2014, first to the Grady County Jail in

4

Oklahoma and then to the United States of America's prison facility in Butner, North Carolina so Mr. Groover could receive treatment at the North Carolina Medical Center. Mr. Groover is informed and believes that the additional transport and mistreatment he received while at the Grady County Jail were done as retribution for his legal battle waged to prevent wrongful convictions resulting from the government's indictments without proper judicial approval or any seal of the Court.

19.     Although Mr. Goover received adequate care in Butner, he was transported on August 14, 2015 in a vehicle containing a dangerous metal dog cage that Mr. Groover had objected to being transported in. Despite his objections, the Government forced him to travel back to the Broward County Jail in Florida in the dog cage. During this transport, Mr. Groover fainted and vomited and various other prisoners died during transport. After Mr. Groover arrived back in Broward County and recovered from his plight in the dog cage, he hand wrote a lawsuit pursuant to 42 U.S.C. § 1983 and filed it.  Despite his lawsuit being dismissed by the district court in Florida, the Eleventh Circuit Court of Appeals reversed the ruling and Mr. Groover ultimately reached a favorable monetary settlement in March of 2019.

20.     Mr. Groover spent more than one year in the Broward County Jail and was transported back to Butner on November 16, 2016.   In May of 2017 Mr. Groover underwent heart surgery at Duke University Hospital.

21.     In June of 2018, Mr. Groover was transported to the Miami Federal Prison Camp, after which he continued to receive obviously unfair treatment by prison officials and the associated medical facility. In or about January of 2019, Mr. Groover began experiencing symptoms of significant pain in his groin area radiating throughout his left testicle. There was a growth on his left testicle as well. Despite the obvious danger arising from Mr. Groover's condition, worsened by the extraordinary stress his body had been under since his original incarceration  in 2013, the Government did nothing about Mr. Groover's complaints for nearly one year. Mr. Groover repeatedly complained but to no avail other than Mr. Groover being singled out by prison officials and repeatedly denied basic necessities as he had been throughout his tenure as an inmate within the Federal Bureau of Prisons. At one point in June of 2019, Mr. Groover was sanctioned for possessing a cellular telephone that he never possessed and was

thereafter denied basic necessities of food and medical care as a formal and informal sanction. The misconduct toward Mr. Groover continued throughout 2019 and 2020 and extended to disputes involving the Warden of the Miami Federal Prison Camp who had instructed medical staff not to care for Mr. Groover.

22. In April of 2020, Mr. Groover was again disciplined for possessing a cellular telephone, however, the discipline related to an alleged incident involving a telephone that purportedly occurred one year earlier. The United States utilized this latest disciplinary proceeding as a ruse to continue denying medical care for Mr. Groover's obviously tumorous condition in his groin area as well as other denials of care regarding infections Mr. Groover had developed.

23. After the foregoing incidents and in fear of either becoming terminally ill or dying as a result of the foregoing seven-year course of misconduct toward him, Mr. Groover wrote a letter to the Warden demanding fair treatment and care for his tumorous testicular condition. On May 5, 2020, the Warden of the Miami Federal Prison Camp called Mr. Groover into his office. In the presence of numerous inmates as well as Secretary Calderon and Unit Manager Fahie, the Warden screamed at Mr. Groover very loudly and expressed that he didn't care about Mr. Groover's health and would assure that Mr. Groover would "do every day" of his sentence. The Warden instructed Mr. Groover to "tell your lawyers about that." The Warden promised to nonetheless have Mr. Groover seen by the medical department, after which Mr. Groover was not promptly seen by the medical department at or following the time of this incident.

24. After the passage of another four months, Mr. Groover was put in solitary confinement without any medical care and told he was in the process of being transferred. Mr. Groover's testicular condition worsened and his symptomatology exacerbated in a pronounced manner. After repeatedly requesting and nearly begging to be taken to the hospital, Mr. Groover was taken to Larkin Community Hospital on September 15, 2020 and finally examined by physicians there. During the examination, the physicians told Mr. Groover that his testicular tumor had been permitted to fester far too long and that there would now likely be severe consequences for not receiving medical intervention sooner.

25.      On September 17, 2020, Mr. Groover was operated on at Larkin Community Hospital and his left testicle was removed. Post surgery, the physicians told him that the removal of his testicle could have been avoided upon prompt medical treatment and that now he would have serious problems for the rest of his life and was at constant pathological risk regarding terminal cancer.

26.      Despite having just undergone major surgery the day before, the Government placed Mr. Groover back in solitary confinement on September 18, 2020 and Mr. Groover had to sleep on the floor because prison officials would not permit him, even post-surgery, to sleep on a lower bunk bed (and Mr. Groover could not traverse to and stay on the upper bunk due to his illness). The Government kept Mr. Groover in solitary confinement for the rest of September, 2020 and throughout October of 2020.

27.      On October 26, 2020, a Physician's Assistant at FCI Prison Camp, Dr. Wong, came to see Mr. Groover in solitary confinement and told Mr. Groover that the post-surgical pathology report he had seen confirmed that Mr. Groover had been hemorrhaging for the past two-plus years. Dr. Wong confirmed to Mr. Groover that he would have untold and serious medical problems in the aftermath of such an illness and should be "very careful" with his health. Mr. Groover asked Dr. Wong how he could be careful without adequate nourishment and medical care in the SHU. Dr. Wong didn't answer but only nodded his head as if to confirm the inherent problem created by the Government's disdain toward Mr. Groover and refusal to provide him with the basic necessities of life. Finally, Mr. Wong said that personnel in the medical department of Miami Federal Prison Camp were openly laughing at the lack of care given to Mr. Groover considering the two-plus year hemorrhaging testicular tumor.

28.      On November 12, 2020, Mr. Groover was transferred from Miami Federal Prison Camp to the Bureau of Prisons, Oklahoma Transfer Center and ultimately to the Federal Detention Center in Oakdale, Louisiana. Mr. Groover arrived in Oakdale on November 17, 2020 and contracted COVID-19 on March 20, 2021 while in a lockdown at the prison. Despite Mr. Groover's constant requests for a vaccine, he did not receive any vaccination until after he contracted COVID-19. And he was repeatedly housed right next to inmates infected with the

virus, which resulted in Mr. Groover contracting COVID-19 two more times. As a result, Mr. Groover now has significant symptomatology associated with post-COVID-19 disease.

29.     On August 9, 2021, despite Mr. Groover's illness with respect to post-surgery and COVID-19, Mr. Groover was transferred not to the Miami Prison Camp but instead to Miami FCI, a low and medium security facility. After arriving at Miami FCI, Mr. Groover was repeatedly housed near inmates with COVID-19 and he ultimately contracted the virus again. Mr. Groover has continued pain in his groin and has significant trouble walking. He becomes winded on the slightest movement and has significant difficulty getting around. In short, Mr. Groover is extremely ill.

30.     In March, 2022, Mr. Groover had a "team meeting" with his case manager, Ms. Bearden, who explained that the Government has placed a "management variable" on Mr. Groover so that he cannot be transferred to a prison camp. Ms. Bearden explained that this was additional punishment for the telephone-based incident and that further punishment was that the Government would never grant home confinement to Mr. Groover despite his significant medical illness and despite having a very small amount of time left on his sentence. Further, Ms. Bearden indicated that Mr. Groover's objection, dating back years, to the Government's failure to obtain judicial approval or the seal of the court to arrest, indict and prosecute him had "placed" Mr. Groover "in a precarious" position during his incarceration.

31.     Subsequent to March of 2022, Mr. Groover has been extraordinarily infirm and there has been a continual unwillingness on the part of the Government to provide him the basic level of medical care acceptable under applicable law. These failures have extended beyond the foregoing matters into every area of medical care including even oral infections which the Government has also singled Mr. Groover out by not providing care to him.

32.     The negligent acts of Defendant's agents and employees were committed while acting within the course and scope of their employ and/or agency with Defendant. Thus, Defendant the United States of America is vicariously liable for the actions of its agents and employees when they committed the negligent acts alleged herein.

33.     At all times material to this action, Defendant had a non-delegable duty to provide Plaintiff, Mr. Groover, with reasonable  medical care. Accordingly, Defendant is also vicariously liable for the actions of contracted-with medical providers.

34.     At all times material to this action, Defendant, by and through its staff, physicians, employees and/or agents, acting within the course and scope of their employment and/or agency, undertook a duty to render medical care to Plaintiff, Mr. Groover, in a skillful and careful manner and in accordance with the accepted standards of medical care and treatment rendered in such cases by physicians Miami, Florida or in any similar medical community.

35.     At all times material to this action, Defendant, by and through its staff, physicians, employees and/or agents, acting within the course and scope of their employment and/or agency, negligently breached the duty of care owed to Plaintiff, Mr. Groover, by failing to examine, diagnose, care for, and treat Mr. Groover in accordance with the accepted standards of care.

36.     The care and treatment of the Plaintiff, Mr. Groover, by the staff of the Defendant both in Miami, Florida and elsewhere, including, but not limited to, the medical staff fell below the prevailing standard of professional care in general and for a primary care physician in one or more of the following ways:

    a.     Failure to fully and properly document the symptoms experienced by the Plaintiff in the months leading to the amputation of his testicle.

    b.     Failure to properly consider and/or diagnose the Plaintiff's excruciating  and severe pain in his groin area despite repeated visits to the Defendant's health care providers and despite the passage of many months.

    c.     Failure to properly consider and/or diagnose the Plaintiff's tumor,  despite repeated visits to the Defendant's health care providers.

    d.     Failure and/or refusal to perform an MRI or similar oncological study with respect to the very area where the Plaintiff was experiencing pain so the cause of Plaintiff's pain could be determined and timely treated.

e.     Failure to treat Plaintiff in a manner where Plaintiff would be able to deal with such life-threatening medical issues, but instead attempting at all times during Plaintiff's incarceration to make life as difficult for him as possible under the circumstances.

f. Failure to make an immediate referral to appropriate specialists to determine the cause of Plaintiff's severe and excruciating pain in a manner timely enough to assure effective intervention.

37.     As the direct and proximate result of the failure of Defendant's medical staff at Miami FCI and Miami Camp to properly diagnose and treat Plaintiff's severe and excruciating pain between for months, as set forth hereinabove, Plaintiff suffered severe and excruciating pain for the better part of two years and ultimately had his testicle amputated as well as experiencing other injuries according to proof.

38.     It is more likely than not that if Plaintiff had been referred to a urologist in a timely fashion after the Defendant first complained of severe pain and presented with testicular enlargement, the need for surgical amputation and concomitant physical fallout could have been avoided in numerous different manners including administration of one of the antibiotics often proven effective in the early stages of such illnesses (e.g., doxycycline, ciprofloxacin, levofloxacin or trimethoprim-sulfamethoxazole).

39. As the further direct and proximate result of the failure of medical staff at Miami FCI and Miami Camp to properly diagnose and treat Plaintiff in the manner set forth above, Plaintiff has been permanently injured in numerous ways according to proof.

40. As the direct and proximate result of the negligence, carelessness, and medical malpractice of the Defendant's employees and contractors, Plaintiff has suffered pain, mental anguish, bodily injury, and permanent disability, and will continue to suffer pain, mental anguish, bodily injury, and permanent disability in the future.

WHEREFORE Plaintiff, Jeffrey Emil Groover, demands judgment against the Defendant, United States of America, as follows:

a. The sum of $10,000,000.00 or more;

b. Costs of suit;

c. Post-judgment interest; and

10

d. Such other relief as the court may deem just and proper.

Dated: September 7, 2022                    Respectfully Submitted,


                                       By:    /s/Elad D. Botwin
                                              Elad D. Botwin, Esq.
                                              Florida Bar No. 1019163
                                              SQUIRE LAW GROUP, P.A.
                                              301 W. Atlantic Avenue, Suite 5
                                              Delray Beach, FL 33444
                                              Phone: (888) 788-8816
                                              Fax: (786) 577-0425
                                              ebotwin@squirelawgroup.com

                                              *Attorneys for Plaintiff*