UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 22-22845-CIV-MARTINEZ

JEFFREY EMIL GROOVER,

    Plaintiff,

vs.

UNITED STATES OF AMERICA,

    Defendant,
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant United States of America's Motion for Summary Judgment ("Motion"), (ECF No. 28.) Plaintiff Jeffrey Emil Groover responded to the Motion ("Response"), (ECF No. 32), to which Defendant replied ("Reply"), (ECF No. 33.) After careful consideration of the relevant briefing and the record, and being otherwise advised in the premises, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**I.  BACKGROUND**[1]

This case arises from Defendant's alleged negligence in delaying medical treatment to Plaintiff. At all relevant times to the Complaint, (ECF No. 1), Plaintiff was an inmate of the federal Bureau of Prisons ("BOP"). (Joint Statement of Undisputed Material Facts ("JSOF") ¶ 1, ECF No. 26.) In June 2018, Plaintiff was transferred to the Federal Correctional Institution in Miami, Florida ("FCI Miami"). (*Id.* ¶ 5.) On July 16, 2019, Plaintiff first complained of a

---

[1]    The facts are undisputed unless stated otherwise. Where the facts are in dispute, the Court construes them in favor of the non-moving party. *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303–04 (11th Cir. 2016).

painful testicular mass to a BOP medical provider. (*Id.* ¶ 7; *see also* Defendant's Statement of Undisputed Facts ("DSOF") ¶¶ 1–4, ECF No. 27.) On July 17, 2019, Dr. Chipi, an FCI Miami physician, reviewed Plaintiff's chart and ordered lab tests for tumor markers AFP and PSA as well as a testicular ultrasound. (JSOF ¶ 8.) However, FCI Miami does not have ultrasound, MRI, or echocardiogram equipment at the prison. (*Id.* ¶ 9; *see also* Depo. of Inerio Alarcon, M.D. ("Alarcon Depo.") at 48:10–25, 49:1–6, ECF No. 30–1.) Therefore, the prison contracts Unique Mobile Diagnostic Services ("Unique Mobile") to come to the prison to perform such tests. (*Id.*)

On August 13, 2019, Plaintiff had a testicular ultrasound performed by Unique Mobile and the result was abnormal. (JSOF ¶ 10.) Unique Mobile then performed an MRI of Plaintiff's testicles on October 22, 2019, and recommended further assessment. (*Id.* ¶ 11.) Because the medical staff at FCI Miami are primary care providers, when an inmate requires specialty care, such as urology, contractor NaphCare schedules the inmate to see a specialist for evaluation and management according to availability. (*Id.* ¶ 15.) On November 12, 2019, Plaintiff was scheduled for a urology consultation at Larkin Hospital regarding the testicular mass. (*Id.* ¶ 12.) While at Larkin Hospital, Plaintiff had bloodwork for tumor markers, including AFP, BetaHCG, and PSA, which were all within the normal range. (*Id.* ¶ 13.) Plaintiff was then diagnosed with a left testicular mass at Larkin Hospital and the plan was exploration of the mass after obtaining medical and surgical clearance. (*Id.* ¶ 14.)

A scheduled target date of December 25, 2019 was set but it is disputed as to exactly what. Plaintiff asserts that Dr. Chipi set the target date of December 25, 2019 for exploration of Plaintiff's testicular mass. (Pl. Statement of Material Facts ("Pl. SMF") ¶¶ 9, 22, ECF No. 31.) Defendant disputes that the exhibit Plaintiff relies on does not support such assertion, but rather is a "consultation request for a cardiology appointment for Plaintiff to obtain cardiac clearance

for the surgery, which includes a target date of December 25, 2019." (Def. Resp. to Pl. SMF ("Def. Resp. SMF") ¶ 22, ECF No. 34; *see also* ECF No. 31-2.)

On November 20, 2019, Dr. Alarcon, clinical director at FCI Miami, reviewed Plaintiff's chart and noted Larkin Hospital's recommendation for cardiology clearance in order for Plaintiff to have surgery. (*Id.* ¶ 16.) FCI Miami does not have a cardiologist on staff, so NaphCare must schedule a cardiologist to come to the prison to examine inmates. (*Id.* ¶ 17.) On November 21, 2019, Dr. Alarcon approved a consultation request for Plaintiff to be seen for an onsite cardiology evaluation at FCI Miami. (*Id.* ¶ 18.) Dr. Alarcon also ordered lab tests on November 25, 2019, that were required for surgical clearance. (*Id.* ¶ 19.) The lab results were reported on December 2, 2019, and included tumor markers AFP, PSA, and BetaHCG which were all within normal range. (*Id.* ¶ 20.) On February 27, 2020, Plaintiff was seen by a cardiologist at FCI Miami, who recommended an echocardiogram before Plaintiff could have testicular surgery. (*Id.* ¶ 21.) Unique Mobile performed the echocardiogram on March 3, 2020, and the echocardiogram report was issued the following day. (*Id.* ¶ 23.) Plaintiff was then cleared for surgery as of March 4, 2020. (*Id.* ¶ 24.)

Previously on March 1, 2020, Florida Governor Ron DeSantis issued Executive Order 20-51 directing the Florida Department of Health to issue a Public Health Emergency due to COVID-19. (*Id.* ¶ 22.) On March 9, 2020, Governor DeSantis issued Executive Order 20-52 declaring a state of emergency for the State of Florida because of COVID-19. (*Id.* ¶ 25.) On March 20, 2020, Governor DeSantis issued Executive Order 20-72, recommending that medical providers "limit all 'non-essential' elective medical and surgical procedures, including dental procedures." (*Id.* ¶ 26.) Executive Order 20-72 also prohibited "[a]ll hospitals, ambulatory surgical centers, office surgery centers . . . and other health care practitioners' offices in the State

of Florida . . . from providing any medically unnecessary, non-urgent or non-emergency procedure or surgery which, if delayed, does not place a patient's immediate health, safety, or wellbeing at risk, or will, if delayed, not contribute to the worsening of a serious or life-threatening medical condition." (*Id.*) The parties dispute whether the treatment Plaintiff needed was a non-essential elective procedure. (Pl. SMF") ¶ 17.)

On March 20, 2020, the BOP issued its Guidance for Prioritizing Outside Medical and Dental Trips During the COVID-19 Pandemic ("BOP Guidelines") which recognized that "[t]he decision to postpone or reschedule medical care in the community is considered an important and necessary step in responding to the national emergency . . . It is affected by several variables including the category and urgency of the care, the safety and health of inmates and staff, and good clinical judgment." (JSOF ¶ 27.) The BOP Guidelines also provided that "[c]are for acute, emergent, or urgent conditions is medically necessary and should not be postponed or rescheduled." (Pl. SMF ¶ 11.) While this is not disputed, Defendant notes that the BOP Guidelines provided examples of such conditions that Plaintiff did not have. (Def. Resp. SMF ¶ 11.)

On April 14, 2020, Dr. Chipi noted in Plaintiff's medical record that "[e]ffective at this time national measures are being implemented by the BOP in order to mitigate the spread of COVID-19 . . . During this National Emergency the BOP-HSD assures that the patient has an adequate supply of chronic care medications. Patient will be placed on CCC [chronic care clinic] call-out as soon as normal operations resume." (*Id.* ¶ 28.) Dr. Chipi also noted that Plaintiff should "[f]ollow-up at Sick Call as needed." (*Id.*).

On September 15, 2020, Plaintiff was admitted to Larkin Hospital for pain in his left testicle. (*Id.* ¶ 31.) The following day, Plaintiff signed a consent for "orchiectomy and any other

4

indicated procedures." (*Id.* ¶ 32.) On September 17, 2020, Plaintiff had a left orchiectomy at Larkin Hospital and was discharged the day after, returning to FCI Miami. (*Id.* ¶¶ 33–34.)

On March 17, 2021, Plaintiff submitted a Claim for Damage, Injury, or Death to the BOP seeking $10 million in damages. (*Id.* ¶ 36.) The basis of the claim was:

> I began going to the medical department in Miami, Camp complaining of pain and a lump on my left testicle in January of 2019. I kept going to medical. An MRI and ultrasound [were] done but I never saw a doctor. I continued to complain until Warden Jenkins called me into the office and yelled and threatened me about writing him. Four more months passed until I was taken to the hospital and my left testicle was amputated.

The BOP denied Plaintiff's claim on March 7, 2022. (*Id.* ¶ 37.) The March 17, 2021 claim is the only tort claim that Plaintiff submitted and therefore exhausted. (*Id.* ¶ 38.) Plaintiff filed the instant lawsuit pursuant to the Federal Tort Claims Act ("FTCA") on September 7, 2022. (ECF No. 1.) On January 9, 2023, Defendant filed its Answer and Affirmative Defenses, denying the allegations of negligence and causation, (ECF No. 6), and filed the instant Motion for Summary Judgment on January 8, 2024.

## II. LEGAL STANDARD

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A "facial attack" on the complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and

5

affidavits are considered.'" *Id.* "When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction." *Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990).

Pursuant to Federal Rule of Civil Procedure 56, a court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if a "reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247–48); *see also Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005). In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Furcron*, 843 F.3d at 1303–04; *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

### III. DISCUSSION

Defendant moves for summary judgment on the basis that the Court lacks subject matter jurisdiction because the discretionary function exemption bars Plaintiff's only exhausted claim. (Mot. 8–16.) Defendant also argues in the alternative that Plaintiff cannot establish damages. (*Id.* at 16–19.) Because Defendant is entitled to summary judgment on its former argument, the Court shall not address the latter.

The FTCA allows a plaintiff to bring certain tort claims against the federal government. *Brownback v. King*, 592 U.S. 209, 210 (2021). "The FTCA waives the United States government's sovereign immunity from suit in federal courts for the negligent actions of its employees." *Ochran v. United States*, 117 F.3d 495, 499 (11th Cir. 1997). However, the discretionary function exception exempts from this waiver claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "When the discretionary function exception to the FTCA applies, no federal subject matter jurisdiction exists." *United States Aviation Underwriters, Inc. v. United States*, 562 F.3d 1297, 1299 (11th Cir. 2009).

The Supreme Court established a two-prong test to determine when the discretionary function exception applies. *United States v. Gaubert*, 499 U.S. 315, 322 (1991). The first prong asks whether the act is "discretionary in nature," such that it "involv[es] an element of judgment or choice." *Gaubert*, 499 U.S. at 322 (internal quotation marks omitted). "[T]he first prong of the exception is satisfied unless 'a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow.'" *OSI, Inc. v. United States*, 285 F.3d 947, 952 (11th Cir. 2002) (quoting *Berkovitz v. United States*, 486 U.S. 531, 534 (1988)). The second prong instructs that "the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (internal quotation marks omitted).

Defendant argues that the Eleventh Circuit's opinion in *Cosby v. United States*, 520 Fed. Appx. 819 (11th Cir. 2013) is instructive. (Mot. at 11.) In *Cosby*, the plaintiff sued the United States under the FTCA alleging that "the United States Marshals Service (USMS) negligently failed to provide appropriate medical care and did not follow transfer procedures for inmates

with severe medical conditions; and (2) the Bureau of Prisons (BOP) negligently failed to follow a doctor's recommended course of treatment, causing the partial amputation of her right foot." *Cosby*, 520 Fed. Appx. at 820. As to the first issue, the plaintiff contended that "the USMS negligently failed to provide adequate care for her foot condition" in violation of USMS Directive for Prisoner Operations 9.4, which governs prisoner health. *Id*. at 821. The court held that "[b]ecause Directive 9.4 does not 'specifically prescribe[ ] a course of action' for USMS employees to follow when a prisoner needs medical care, the decision about what specific type of care to provide is a discretionary matter that satisfies the first prong of the exception." *Id*. (quoting *Berkovitz*, 486 U.S. at 534). The court further held that the second prong of the discretionary function exemption was also satisfied because "in determining the precise course of medical treatment to pursue, several policy considerations are relevant, including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility," the directive is susceptible to policy analysis. *Id*.

As to the second issue, the plaintiff argued that "the USMS was negligent in transferring her to several facilities instead of allowing her to remain at one until her medical treatment was complete." *Id*. Directive 9.4 provides that "USM[S] district management will ensure proper arrangements are made to provide continuity of medical care for USMS prisoners." Directive 9.4, *Prisoner Health Care*, ¶ 9(a)(4). The court held that the discretionary function exemption applied to this issue as well because "the 'proper arrangements' to be made in each individual case are necessarily left to the discretion of USMS employees . . . [a]nd those decisions are susceptible to policy analysis because USMS officials must consider which facilities have space available and the placement of the prisoner in a facility that provides an appropriate level of security." *Id*.

Plaintiff counters in his Response that the delay in his treatment leading to the amputation of his left testicle was due to deliberate indifference resulting in a constitutional violation. (Resp. at 4–7.) However, as Defendant correctly notes, Plaintiff never alleged a constitutional violation. Instead, the Complaint alleges a claim for negligence under the FTCA. (*See* Compl. ¶¶ 3, 35–40.) The Response also highlights *Krocka v. Georges*, 2021 WL 11718130 (N.D. Ga. Jan. 18, 2021) (Report and Recommendation), *adopted by*, 2021 WL 11718181 (N.D. Ga. Feb. 18, 2021), in which the delayed treatment of plaintiff's detached retina resulted in permanent loss of vision. *Id.* at *5. In *Krocka*, the court denied defendants' motions for summary judgment, holding that the delay in medical treatment constituted deliberate indifference and therefore the discretionary function exemption did not apply. *Id.* at *25. However, although *Krocka* similarly raises a negligence claim under the FTCA, it is factually distinguishable from the instant case. In *Krocka*, the BOP's Patient Care Policy ("PCP") "specifically lists both 'detached retina' and 'sudden loss of vision' as conditions that qualify as "Medically Necessary – Acute or Emergent," *i.e.*, that need immediate medical care similar to someone suffering from a heart attack, hemorrhage, or head injury." *Id.* at *5. The individual defendants "all had read the PCP and were aware that a detached retina and sudden loss of vision were classified as medical conditions that require immediate treatment." *Id.*

Here, unlike *Krocka*, there was no policy that distinguished Plaintiff's medical condition or that prescribed a certain course of action. (*See* Reply at 3.) This Court therefore agrees with the Eleventh Circuit's holding in *Cosby* that "the decision about what specific type of care to provide is a discretionary matter that satisfies the first prong of the exception." *Cosby*, 520 F. Appx. at 821. As to the second prong, decisions about sending inmates to outside specialists, hiring contractors to perform tests at the prison, and determining which course of medical

treatment to pursue are susceptible to policy analysis because "several policy considerations are relevant, including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option." *Id.* Moreover, considering that Plaintiff's treatment occurred during a worldwide pandemic implicates further policy-based considerations. Accordingly, this Court finds that the second prong is also satisfied and is therefore without jurisdiction as to Plaintiff's sole FTCA claim against Defendant.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, (ECF No. 28), is **GRANTED**.
2. All pending motions are **DENIED AS MOOT**.
3. The Clerk of Court is **DIRECTED** to **CLOSE** this case and terminate the Calendar Call and Trial scheduled in this matter.
4. The Court with enter Final Judgment by separate order pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19 day of March, 2024.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record